IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


SHANNON DAVID,                    §
                                  §
            Plaintiffs,           §
                                  §
v.                                §        CIVIL ACTION NO. H-05-3960
                                  §
KBR TECHNICAL SERVICES, INC.,     §
                                  §
            Defendant.            §


**MEMORANDUM OPINION AND ORDER**


Plaintiff, Shannon David, brings this action against defendant, KBR Technical Services, Inc. (KBRTS), for employment discrimination in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12112, <u>et seq.</u>  Pending before the court is Defendant KBR's Motion to Compel Arbitration and to Dismiss or Stay Proceedings (Docket Entry No. 9).  For the reasons set forth below, defendant's motion will be denied.


## I.  **Factual Background**

Plaintiff alleges that on June 18, 2004, KBRTS terminated her employment because of her "personal illness[es]" of chronic pancreatitis and pain.  On November 22, 2005, plaintiff filed this lawsuit alleging that KBRTS terminated her in violation of the ADA.  On April 12, 2006, KBRTS filed the pending motion to compel arbitration.

## II.  <u>Motion to Compel Arbitration</u>

Asserting that plaintiff's claims arise from her employment at KBRTS and that plaintiff has agreed to arbitrate any claim arising from her employment at KBRTS, KBRTS moves the court to compel arbitration.  Asserting that she never agreed to arbitrate claims arising from her employment at KBRTS, plaintiff urges the court to deny KBRTS's motion to compel arbitration.

**A.   Standard of Review**

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 <u>et seq.</u>, creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 103 S.Ct. 927, 941 (1983).  Section 2 of the FAA states that a written arbitration agreement in any contract involving interstate commerce is valid, irrevocable, and enforceable except on grounds that would permit the revocation of a contract in law or equity.  <u>Id.</u> ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements.").  Section 4 of the FAA permits a party to seek an order compelling arbitration if the other party has failed to arbitrate under a written agreement.  When deciding whether parties should be compelled to arbitrate, courts conduct a two-step inquiry.  <u>OPE International LP v. Chet Morrison Contractors, Inc.</u>, 258 F.3d 443, 445 (5th Cir. 2001).  First, a court must decide whether the

parties agreed to arbitrate their dispute.  Id.  "This determina-
tion involves two considerations:  (1) whether there is a valid
agreement to arbitrate between the parties; and (2) whether the
dispute in question falls within the scope of that arbitration
agreement."  Id.  Second, if the court determines that the parties
agreed to arbitrate the dispute, the court must consider "whether
legal constraints external to the parties' agreement foreclosed the
arbitration of those claims."  Id. at 446.  If a valid agreement is
found, and there are no legal constraints external to the agreement
that foreclose arbitration, arbitration is mandatory.  See Volt
Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford
Junior University, 109 S.Ct. 1248, 1254-1256 (1989).  See also
Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 105 S.Ct.
3346, 3354-3355 (1985) ("Having made the bargain to arbitrate, the
party should be held to it unless Congress itself has evinced an
intention to preclude a waiver of judicial remedies for the
statutory rights at issue.").

**B.   Existence of a Valid Agreement to Arbitrate**

Plaintiff argues that she should not be compelled to arbitrate
the claims asserted in this action because she never agreed to
arbitrate claims against KBRTS.[1]

---

[1]Plaintiff's Response in Opposition to Defendant's Motion to
Compel Arbitration and to Dismiss or Stay Proceedings, Docket Entry
No. 10, pp. 11-12.

1.   <u>Controlling Law</u>

"The Supreme Court has held that under the FAA, the federal courts may only consider 'issues relating to the making and performance of the agreement to arbitrate.'"   <u>Banc One Acceptance Corp. v. Hill</u>, 367 F.3d 426, 429 (5th Cir. 2004) (quoting <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 87 S.Ct. 1801, 1806 (1967)).  "Where the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter." <u>Id.</u> (citing <u>Will-Drill Res., Inc. v. Samson Res. Co.</u>, 352 F.3d 211, 214 (5th Cir. 2003)).  Disputes over the validity of agreements to arbitrate are analyzed under ordinary state-law principles of contract construction, and the party asserting modification bears the burden of proof.  <u>Id.</u> at 428-429.

Texas law allows either party to an at-will employment contract to modify the terms of employment as a condition of continued employment.  <u>See</u> <u>Hathaway v. General Mills, Inc.</u>, 711 S.W.2d 227, 229 (Tex. 1986).  "To prove a modification of an at will employment contract, the party asserting the modification must prove two things:  (1) notice of the change; and (2) acceptance of the change."  <u>Id.</u>  In <u>Hathaway</u> the Texas Supreme Court explained that "to prove notice, an employer asserting a modification must prove that he unequivocally notified the employee of definite changes in employment terms." <u>Id.</u> <u>See also</u> <u>In re Halliburton Co.</u>, 80 S.W.3d 566, 568 (Tex. 2002), <u>cert. denied</u>, 123 S.Ct. 901 (2003).

-4-

2.   <u>Evidence Presented by the Parties</u>

(a)   Evidence Presented by KBRTS

In support of its assertion that plaintiff agreed to arbitrate all claims regarding her employment, KBRTS submits the declaration of Melinda Miner and the affidavits of Stephen Davison, Theresa Plaxco, and Ronald Garrow.

**(1)  Melinda Miner**

Melinda Miner identifies herself as an Associate Ombudsman for Halliburton Company's Houston office and states that she coordinated the preparation and mailing of notices to all employees of Halliburton Companies, including KBRTS, regarding Halliburton's Dispute Resolution Program (DRP) during the summer of 1999 and again in the fall of 2001.[2]  Miner states that "[t]hese materials communicated that all employees who continued employment with any Halliburton-related entity, including KBRTS, would be bound by the Program provisions, including the requirement that any employment-related dispute be submitted to binding arbitration."[3]  Miner states that in 1999 the materials were printed by Reynolds & Reynolds, Inc. (Reynolds), that in 2001 they were printed by Relizon, and that both the 1999 and 2001 mailings were done by

---

[2]Declaration of Melinda Miner, Exhibit A attached to Defendant KBR's Motion to Compel Arbitration and to Dismiss or Stay Proceedings, Docket Entry No. 9, ¶¶ 2-3.

[3]<u>Id.</u> at ¶ 3.

National Mail Advertising, Inc.[4]  Miner also states that the contractors received the names and addresses of the employees to whom the materials were to be mailed on a computer tape, that plaintiff's name and address were on the computer tape, and that no materials addressed to the plaintiff were ever returned to Halliburton as undeliverable.[5]

### (2)  Stephen Davison

Stephen Davison identifies himself as a Reynolds employee and states that during the summer of 1999 Halliburton engaged Reynolds to print and mail certain documents relating to its DRP and that after printing the materials, Reynolds subcontracted National Mail Advertising to address and mail the materials.[6]

### (3)  Theresa Plaxco

Theresa Plaxco identifies herself as a Relizon employee and states that during the fall of 2001 Halliburton engaged Relizon to prepare a mail-out of documents relating to its DRP and that Relizon printed the documents and subcontracted the task of mailing the documents to Nation Mail Advertising.[7]

---

[4]Id. at ¶¶ 4-6.

[5]Id. at ¶¶ 4-7.

[6]Affidavit of Stephen Davison, Exhibit B attached to Defendant KBR's Motion to Compel Arbitration and to Dismiss or Stay Proceedings, Docket Entry No. 9.

[7]Affidavit of Theresa Plaxco, Exhibit D attached to Defendant KBR's Motion to Compel Arbitration and to Dismiss or Stay Proceedings, Docket Entry No. 9.

### (4)  Ronald Garrow

Ronald Garrow states that he is President of National Mail Advertising and that during the summer of 1999 Reynolds contracted National Mail Advertising to mail printed material pertaining to Halliburton's DRP.[8]  Garrow states that "[i]n addressing these packets, we used a computer tape provided to me by Steve Davison of Reynolds & Reynolds.  It was our job to address and send a packet to every addressee on the tape.  We did so on or about July 9, 1999.  Each envelope containing the packets bore Halliburton's return address."[9]  In a second affidavit, Garrow states that his company performed the same tasks for Relizon in the fall of 2001.[10]

### (b)  Evidence Presented by Plaintiff

Acknowledging that she was an at-will employee,[11] plaintiff submits an affidavit stating that she was employed by Norell

---

[8]Affidavit of Ronald Garrow, Exhibit C attached to Defendant KBR's Motion to Compel Arbitration and to Dismiss or Stay Proceedings, Docket Entry No. 9.

[9]Id. at ¶ 4.

[10]Affidavit of Ronald Garrow, Exhibit E attached to Defendant KBR's Motion to Compel Arbitration and to Dismiss or Stay Proceedings, Docket Entry No. 9.

[11]Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration and to Dismiss or Stay Proceedings, Docket Entry No. 10, pp. 11-12.  See also Affidavit of Shelly Scott, Exhibit F attached to Defendant KBR's Motion to Compel Arbitration and to Dismiss or Stay Proceedings, Docket Entry No. 9, ¶ 5 (stating that plaintiff "was employed for no specific or particular duration, and was free to resign her employment at any time.  Similarly, KBRTS was free to terminate her employment at any time.").

Resources, Inc. (Norell) from June 21, 1997, until sometime in 1999 when Norell merged with KBRTS/Halliburton, and that thereafter she was employed by KBRTS as an Executive Secretary to the Senior Vice-President for Global Sales.[12]   Plaintiff states that she did not receive by mail, or by any other means, notice of any DRP from Halliburton or KBRTS.[13]   Plaintiff states that she had the same supervisor throughout her employment with KBRTS and that "at no point in time did my supervisor provide any information or documentation regarding an alleged [DRP]."[14]   Plaintiff states that she "was never provided any such materials by anyone else, nor was such a program discussed with me."[15]

   3.   Application of Controlling Law to the Evidence

   The evidence submitted by KBRTS is that on two different occasions, first during the summer of 1999 and again during the fall of 2001, Halliburton and its contractors mailed to employees of Halliburton-owned companies information about Halliburton's DRP. Since plaintiff's name was included in the list of employees to whom the DRP materials were to be mailed, since these materials included notice that continued employment would be contingent upon agreement to the DRP, which included an agreement to arbitrate

---

[12]Affidavit of Shannon David, Exhibit A attached to Plaintiff's Response in Opposition to Defendant's Motion to Compel Arbitration and to Dismiss or Stay Proceedings, Docket Entry No. 10, ¶¶ 3-4.

[13]Id. at ¶ 5.

[14]Id. at ¶ 7.

[15]Id.

employment-related disputes, and since plaintiff continued to work for KBRTS until June of 2004 when she was terminated, KBRTS argues that plaintiff agreed to arbitrate her employment-related disputes with KBRTS.  Plaintiff submitted evidence that she never received the DRP materials that KBRTS argues were mailed to her during the summer of 1999 and again in October of 2001, and never otherwise agreed to arbitrate her disputes with KBRTS.  Plaintiff's affidavit denying notice of Halliburton's DRP, and KBRTS' failure to present any evidence showing that plaintiff received the DRP mailings or any other unequivocal notice of definite changes in the terms of her employment, raises a fact issue that precludes the court from concluding that there exists a valid agreement between KBRTS and plaintiff to arbitrate disputes arising from her employment.  See In re Halliburton, 80 S.W.3d at 568 (change in at-will employment relationship requires unequivocal notice and acceptance).

### III.  Conclusions

Because the evidence presented in support of and opposition to defendant's motion to compel arbitration raises a fact issue concerning whether there exists a valid agreement between KBRTS and plaintiff to arbitrate disputes arising from plaintiff's employment with KBRTS, Defendant KBR's Motion to Compel Arbitration and to Dismiss or Stay Proceedings (Docket Entry No. 9) is **DENIED.**

**SIGNED** at Houston, Texas, on this the 17th day of May, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE